**In re Eddie W. LEMKA and Melanie J. Lemka a/k/a Melanie J. Seay, Debtors.**

**Bankruptcy No. 96–20502.**

United States Bankruptcy Court, E.D. Tennessee.

Sept. 26, 1996.

Alan C. Lee, Morristown, TN, for Eddie W. Lemka and Melanie J. Lemka.

H. Scott Reams, Taylor, Reams, Tilson & Harrison, Morristown, TN, for Jefferson Federal Savings and Loan Association.

## *MEMORANDUM*

MARCIA PHILLIPS PARSONS,
Bankruptcy Judge.

This case is before the court on the objection by Jefferson Federal Savings and Loan Association ("Jefferson Federal") to confirmation of debtors' proposed chapter 13 plan. At issue is whether certain real property owned and conveyed in trust by Margaret Lemka as security for a promissory note executed by her and the debtors, Eddie and Melanie Lemka, in favor of Jefferson Federal on March 3, 1995, is also security for a subsequent loan made to the debtors alone by Jefferson Federal on March 5, 1996. As discussed below, the court finds that the loan of March 5, 1996, is not secured by Margaret

Lemka's real property and accordingly, overrules Jefferson Federal's objection to confirmation. The following constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a), as incorporated by Fed.R.Bankr.P. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(L).

### I.

The pertinent facts along with the two promissory notes and the deed of trust in question have been stipulated by the parties in a joint pretrial statement. Those stipulations establish that on March 3, 1995, the debtors and Margaret Lemka, the mother of Eddie Lemka, executed an adjustable rate promissory note to Jefferson Federal in the amount of $57,500.00, to be repaid in 300 monthly installments, in the unadjusted initial amount of $492.42. As security for the loan, the debtors and Margaret Lemka executed that same day a deed of trust in favor of Jefferson Federal conveying in trust the debtors' real property and Margaret Lemka's real property, consisting of the debtors' residence and the residence of Margaret Lemka, respectively.

A year later on March 5, 1996, the debtors alone executed a promissory note in favor of Jefferson Federal in the amount of $18,392.29. That note states on its face that it is secured by liens against the titles of three motor vehicles owned by the debtors, a 1985 Chevrolet pickup, a 1992 Chevrolet Cavalier and a 1982 Chevrolet Camaro. The note further provides that "collateral securing other loans with [Jefferson Federal] may also secure this loan."

The debtors filed the petition initiating this chapter 13 case on March 14, 1996. On April 10, 1996, Jefferson Federal filed two proofs of claims, one in the amount of $57,973.32 for the loan of March 3, 1995, and the other in the amount of $18,692.29 for the subsequent loan of March 5, 1996. The plan as presently proposed by the debtors treats the March 3, 1995 loan as fully secured, with Jefferson Federal to be paid its monthly maintenance payment of $492.42 and the arrearage thereon of $1,141.00 in monthly payments of $30.00 without interest. As for the loan of March 5, 1996, the debtors propose to pay

Jefferson Federal the value of the vehicles, $9,800.00, plus ten percent interest in monthly payments of $210.00, with the balance of the claim in the amount of $8,892.29 to be paid as unsecured.

■ Jefferson Federal has not objected to the debtors' proposed treatment of its claim arising out of the March 3, 1995 loan, nor does it dispute the valuation of the vehicles pledged in the March 5, 1996 note. Jefferson Federal contends, however, that this second loan is secured not only by the vehicles, but also by the parcels of real property pledged by the debtors and Margaret Lemka in the earlier loan and that, therefore, it is not being paid the value of its allowed secured claim as required by 11 U.S.C. § 1325(a)(5).[1] Jefferson Federal's position is based on a "dragnet" or "other indebtedness" provision in the deed of trust which states that, in addition to securing the March 3, 1995 note, the deed of trust is made "TO SECURE to Lender ... (c) the repayment of any other sum owing from Borrower to Lender, whether presently owing, or hereafter incurred."[2]

The parties agree that the real property owned and pledged by the debtors in the deed of trust is not sufficient to secure both the March 3, 1995 note and the balance of the March 5, 1996 loan. However, there is sufficient equity in the real property owned by Margaret Lemka to render Jefferson Federal fully secured if the deed of trust collateralizes the March 5, 1996 loan to the debtors. It is the position of the debtors that Margaret Lemka's real property does not secure this loan because Margaret Lemka never consented to allowing her residence to be collateral for the loan of March 5, 1996. The debtors note that, unlike the loan of March 3, 1995, Margaret Lemka did not execute the March 5, 1996 note as a borrower, nor did she execute a continuing guaranty which the debtors contend is required by TENN.CODE ANN. § 47–12–107.[3] Jefferson Federal responds that consent was given by Margaret Lemka in the deed of trust pursuant to the document's dragnet clause and that execution of a continuing guaranty as contemplated by TENN.CODE ANN. § 47–12–107 is not necessary because Jefferson Federal does not seek to hold Margaret Lemka personally liable for the March 5, 1996 loan to the debtors, only a determination that her real property is collateral for this debt.

The parties have requested that the court rule on these issues based on the stipulations of fact submitted to the court by the parties. There is no dispute as to the validity of the documents in question which consist of the two promissory notes and deed of trust, and the parties agree that the deed of trust is a valid lien against the real property described therein.

## II.

■ Dragnet clauses have long been recognized and enforced by Tennessee courts

---

1. In order for a plan to be confirmed, section 1325(a)(5) of the Bankruptcy Code requires that, unless the creditor accepts the plan or its collateral is surrendered, each allowed secured claim provided for by the plan must retain its lien and "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [must be] not less than the allowed amount of such claim."

2. A dragnet clause is one which, on its face, purports to include within the coverage of the deed of trust all present and future indebtedness owed by the borrower to the lender in addition to the specific debt being secured by the deed of trust. Other names given by the courts include anaconda, conglomerate, other indebtedness, open end, blanket, or omnibus clauses. *See* Milton Roberts, Annotation, *Debts Included in Provision of Mortgage Purporting to Cover All Future and Existing Debts (Dragnet Clause)—Modern Status*, 3 A.L.R. 4th 690, 694–95 n. 3 (1981).

3. TENN.CODE ANN. § 47–12–107 provides as follows:

(a) Notwithstanding any provision to the contrary, no continuing guaranty or suretyship agreement which guarantees the performance of all present and future obligations shall be enforceable against a surety unless the individual or organization agrees in writing to guarantee the future obligation; provided, that no additional writing or guarantee shall be required, at the time of the advance, for advances which are permitted pursuant to the terms of the guaranty or suretyship agreement. (b) The provisions of this section only apply when the indebtedness of the principal debtor arises from personal obligations, and do not apply when the indebtedness arises from commercial obligations.

according to their terms. *See Willie v. First American National Bank (In re Willie),* 157 B.R. 623, 625–26 (Bankr.M.D.Tenn.1993); *Rogers v. First Tennessee Bank, N.A.,* 738 S.W.2d 635, 636–37 (Tenn.App.1987); *Duncan v. Claiborne County Bank,* 705 S.W.2d 663, 664–65 (Tenn.App.1985). In 1983, the Tennessee legislature endorsed the use of such clauses in debt instruments by the enactment of TENN.CODE ANN. § 47–50–112(b), which provides the following:

> Any contract, security agreement, note, deed of trust, or other security instrument, in writing and signed or endorsed by the party to be bound, that provides that the security interest granted therein also secures other indebtedness, be it unsecured, commercial, credit card, or consumer indebtedness, shall be deemed to evidence the true intentions of the parties, and shall be enforced as written; provided, that nothing herein shall limit the right of any party to contest the agreement on the basis that it was procured by fraud or limit the right of any party to assert any other rights or defense provided by common law or statutory law in regard to contracts.

*See In re Willie,* 157 B.R. at 625.

The focus of reported decisions by the Tennessee courts is whether the language contained in the dragnet clause is plain and unambiguous such that a layperson could comprehend its meaning. *See In re Willie,* 157 B.R. at 626, *citing Murdock Acceptance Corp. v. Jones,* 50 Tenn.App. 431, 362 S.W.2d 266, 270 (1961); *Wright v. Lincoln County Bank,* 62 Tenn.App. 560, 465 S.W.2d 877, 880 (1970); *Johnson v. Midland Bank & Trust Co.,* 715 S.W.2d 607, 612 (Tenn.App.1986); and *Rogers,* 738 S.W.2d at 636–37. If the language is plain and unambiguous, a court must consider the intention of the parties to a deed of trust to be what the plain language therein declares it to be. *See Midland Bank & Trust Co.,* 715 S.W.2d at 611–12, *quoting Lincoln County Bank,* 465 S.W.2d at 880–81.

The relevant language of the deed of trust in the present case states as follows:

> TO SECURE to Lender (a) the repayment of the indebtedness evidenced by Borrower's note dated 3–3–95 (herein "Note"), in the principal sum of $57,500.00, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on 3–1–2020; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained; and (b) the repayment of any future advances, with interest thereon, made to Borrower by Lender pursuant to paragraph 21 (herein "Future Advances") of the Master Form Deed of Trust incorporated herein; and (c) the repayment of any other sum owing from Borrower to Lender, whether presently owing, or hereafter incurred.

Subsection (c) of this paragraph clearly provides that the deed of trust secures not only the note executed by the parties in connection therewith, but any other sums owed by "Borrower to Lender," now or in the future. The critical determination for this court is: who is the "Borrower"? Is each of the three individuals who signed the note and deed of trust a "Borrower" such that a future loan to just one or two of the three is secured by the dragnet clause? Or does "Borrower" refer to the three individuals collectively, as a unit, such that only future loans incurred by all three persons together fall within the parameters of the dragnet provision?

The only definition of "Borrower" found in the deed of trust is that set forth in the opening paragraph which provides as follows:

> THIS DEED OF TRUST is made this 3rd day of March, 1995, among the Grantor, EDDIE W. LEMKA and wife, MELANIE J. LEMKA and MARGARET LEMKA, Single (herein "Borrower"), DAVID M. TILSON of Hamblen County, Tennessee, (herein "Trustee"), and the Beneficiary, JEFFERSON FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation organized and existing under the laws of Tennessee, whose address is 219 East First North Street, Morristown, Tennessee 37814 (herein "Lender").

The singular word "Borrower" is used throughout the deed of trust and the closing line of the deed of trust recites "IN WITNESS WHEREOF, borrower has executed this deed of trust." This language is followed by the individual signatures of Margaret Lemka, Eddie W. Lemka, and Melanie J. Lemka. No other definition of borrower is set forth in the deed of trust[4] or even in the note executed contemporaneously therewith by the parties.[5] The note simply refers to the borrower in the first person (*e.g.,* "I promise," "I must repay") and is signed by the debtors and Margaret Lemka.

Consideration of the language used in these documents leads the court to the conclusion that the average layman reading the deed of trust would understand that the dragnet provision covers any existing or future loans to the borrower in that transaction, which is "Eddie W. Lemka, Melanie J. Lemka, and Margaret Lemka" collectively, not just any one of the three. Based on this reading, the court must find that the parties intended to secure only future advances or other indebtedness of the three individuals together. If it had been the intent of the parties to secure the individual debts of each, the deed of trust could have simply provided that it secures any other sum owing from Borrower "or any of them," "jointly or severally" or similar such language, which is the customary method to include the future debts of any of the parties. *See Citizens Bank & Trust Co. of Washington v. Gibson,* 490 N.E.2d 728, 729 (Ind.1986) ("The customary method to include future several debt under a mortgage is to include a phrase such as 'the indebtedness of the mortgagors or either of them.'"). *See, e.g., Rogers,* 738 S.W.2d at 636–37 ("whether several, joint or joint and several," "or any of them"); *Duncan,* 705 S.W.2d at 664 ("or either of them"); and *Lincoln County Bank,* 465 S.W.2d at 877 ("the undersigned, or either of them").

Although there is no reported Tennessee decision with similar pertinent facts, courts from other jurisdictions have likewise reached this conclusion in construing dragnet clauses with similar language. *See Bank of Woodson v. Hibbitts,* 626 S.W.2d 133 (Tex. App.1981), *rehearing denied* (1981) (deed of trust executed by mother, son and son's wife conveying real property owned solely by mother to secure note executed by all three along with any future indebtedness "owing by mortgagors to mortgagee" only secured future indebtedness owed by all three, not either or any of the three); *Citizens Bank & Trust Co.,* 490 N.E.2d at 728 (mortgage wherein mortgagor, defined jointly as husband and wife, conveyed the couples' real property to secure "all indebtedness of mortgagor and borrowers to Mortgagee whether now existing or hereinafter incurred" did not cover separate indebtedness thereafter incurred by husband); *Holiday Inns, Inc. v. Susher–Schaefer Investment Co.,* 77 Mich. App. 658, 259 N.W.2d 179 (1977) ("Where there are three co-mortgagors and the dragnet clause refers to these mortgagors as 'party of the first part' and 'grantor' and covers the indebtedness of the 'grantor,' notes subsequently signed by only one of the co-mortgagors are not secured by the mortgage."); and *Americus Finance Co. v. Wilson,* 189 Ga. 635, 7 S.E.2d 259 (1940) (security deed executed by three individuals as "grantor" was not security for subsequent debt of just one of the individuals because it was not an indebtedness of the "grantor" within the meaning of the security deed).

---

4. The deed of trust incorporates into its provisions all of the covenants, conditions, obligations and powers set forth in a Master Form Deed of Trust ("Master Form"). Because of the possibility that further definition of borrower would be found in the Master Form, the court requested that Jefferson Federal file a certified copy of the Master Form. A review of the certified copy reveals no definition of borrower or any other provision which would aid the court in its determination of the parties' intentions in this respect, although it appears that a page of the Master Form was missing from the certified copy filed with the court.

5. It is a general rule of construction that a deed of trust and a note secured by it are deemed to be parts of one transaction and are to be construed together as such, with the intention of the parties to be determined from an examination of both unless there is an irreconcilable difference between the two documents. *See* 19 Tenn.Juris. *Mortgages and Deeds of Trust* § 19 n. 13.1 (1995 supp.), *citing Ferguson v. Peoples National Bank,* 800 S.W.2d 181 (Tenn.1990).

The Tennessee cases cited by Jefferson Federal in its brief in support of its assertion that the dragnet clause in the present case secures future debts of any of the borrowers either turn on facts and language dissimilar from the present case or are not on point. As observed by the debtors in their brief, both *Bank of Roane County v. Renfro,* 1988 WL 20524 (Tenn.App., March 4, 1988) and *Rogers* concerned a single maker and subsequent (*Bank of Roane County* ) or concurrent (*Rogers* ) loans to the respective maker. There was no issue in those cases as to whether the dragnet clause included loans to the borrowers collectively, individually or both.

Arguably the case of *Murdock Acceptance Corp.* presents the best authority for Jefferson Federal's position. In that case, the court had before it a deed of trust executed by a husband and wife conveying their residence as security for a $5,000.00 line of credit to the husband for floor plan financing of his used car business. *Murdock Acceptance Corp.,* 362 S.W.2d at 267. After the husband subsequently defaulted on other debts to the lender, the lender sought to apply the collateral previously pledged by the husband and wife to the entire indebtedness owed by the husband, even though it exceeded $5,000.00, based upon dragnet language in the deed of trust securing "any and all other indebtedness now or at any time due by the undersigned to the said Kensinger Acceptance Corporation." *Id.* The wife argued that this provision only covered future loans to the couple jointly. The court disagreed and found for the lender, concluding that "the average layman would understand [the other indebtedness clause] to mean that all indebtedness owed to Kensinger by either or both of the signers of the deed of trust would be secured by the deed of trust." *Id.* at 270.

The crucial difference between *Murdock Acceptance Corp.* and the present case is that, unlike the facts herein, the borrower in *Murdock* was exactly the same on both the original indebtedness and the subsequent ones. The husband alone signed the original note and the husband alone was the obligor on the subsequent debts. The deed of trust in that case clearly covered future advances and any layperson reading the provision would have understood that the deed of trust would secure not only the note executed contemporaneously by the husband but also future advances to the husband. The wife's argument to the contrary was simply not tenable. Furthermore, the deed of trust in *Murdock Acceptance Corp.* provided no definition of borrower, unlike the deed of trust in the present case which in its opening paragraph refers to the three individuals collectively as "Borrower." Accordingly, *Murdock Acceptance Corporation* is distinguishable from the present case and, therefore, is not controlling.

### III.

The court having concluded from the plain and unambiguous language of the deed of trust that only future loans to the debtors and Margaret Lemka collectively are secured by the deed of trust, it follows that the loan of March 5, 1996 to the debtors alone is not secured by the real property of Margaret Lemka conveyed in the deed of trust.[6] That is not to say, however, that the loan of March 5, 1996, extended to the debtors is not collateralized by the debtors' real property since the debtors clearly evidenced their intention to do so by signing the subsequent note of March 5 which recited that "collateral securing other loans with [Jefferson Federal] may also secure this loan."

Jefferson Federal's objection to confirmation is accordingly overruled. An order will be entered in conformance with this memorandum opinion.

---

6. In light of the foregoing, it is not necessary for the court to address the debtors' argument regarding whether a continuing guarantee was required to be signed by Margaret Lemka.