**William O. MOORE and wife, Janice Moore, Plaintiffs–Appellees,**

v.

**Leon MOORE, Defendant–Appellant.**

Tennessee Court of Appeals, Middle Section.

June 27, 1980.

Permission to Appeal Denied Sept. 2, 1980.

Fred Hunt, Jr., Shelbyville, for plaintiffs–appellees.

F. Dulin Kelly, Hendersonville, for defendant–appellant.

## OPINION

TODD, Judge:

This is a suit by the sellers to recover damages for purchaser's failure to buy a tract of land as agreed. On July 11, 1978, the plaintiffs, William O. Moore and Janice Moore, agreed with the defendant, Leon Moore, that plaintiffs would sell and defendant would buy a certain tract of land in Shelbyville, Tennessee, upon terms set out in a written agreement signed by the parties. The purchaser deposited with Jerry Shelton, a real estate agent, the sum of $8,525.00 earnest money, which was the agreed amount of liquidated damages for breach of the contract by purchaser. Purchaser defaulted and this suit ensued.

Shelton was originally joined as defendant in this suit; but after paying $8,525.00 into court, he was dismissed as defendant and is not involved in this appeal.

The contract contained the following provision:

This contract is contingent upon the following terms:

1. Buyers ability to obtain adequate financing.
2. Buyers ability to obtain proper zoning and a building permit for the construction of a Wendy's Old Fashioned Hamburger Restaurant.

Buyers' earnest money to be returned, if there is a failure of either or both of the above stated contingencies.

It is agreed that the closing of this transaction is to be on or before August 1, 1978. Revised 10 August 28, 1978.

It is uncontroverted that defendant failed to consummate the transaction on August 28, 1978, as agreed. It is likewise uncontroverted that defendant was unable to obtain adequate financing in Shelbyville, and equally uncontroverted that he was able to obtain adequate financing in Nashville.

The only controversy is whether defendant was relieved of performance by inability to obtain adequate financing in Shelbyville or was bound to perform because of the availability of financing in Nashville.

Appellant's defense was based upon an alleged latent ambiguity in the words, "adequate financing," or the alleged "intent of the parties" that financing be available in Shelbyville.

After hearing the cause, the Chancellor entered a judgment in favor of the plaintiffs and against the defendant for the $8,525.00 paid into court; and the defendant, Leon Moore, has appealed.

The first issue presented on appeal is as follows:

Whether the Trial Court erred as a matter of law in failing to properly interpret the phrase "adequate financing" contained in the written contract for the sale of real estate in accordance with those recognized principles of contract law which govern the interpretation of written contracts in Tennessee.

Appellant first relies upon the "plain meaning rule", citing *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, Tenn.1975, 521 S.W.2d 578. In that case, the Court said:

It is the Court's duty to enforce contracts according to their plain terms . . . the language used must be taken and understood in its plain and ordinary popular sense.

Appellant also relies upon *Rodgers v. Southern Newspapers, Inc.*, 214 Tenn. 335, 379 S.W.2d 797 (1964), wherein the Court said that the courts are required:

. . . to view the contract from all four corners and try . . . to determine what the intention of the parties was.

It has also been held in Tennessee that, "a contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." *Empress Health and Beauty Spa, Inc. v. Turner*, Tenn.1973, 503 S.W.2d 188; *Farmers–Peoples Bank v. Clemmer*, Tenn.1975, 519 S.W.2d 801.

■ A qualifying word which may be read into every contract is the word "reasonable", or its equivalent "reasonably." For example, no rational person would insist that the expression, "ability to obtain adequate financing" include some remote or unreasonable location or method of financing. For example, the mere fact that an Oil Sheik in Arabia might express a willingness to furnish financing, or that financing might be available by a public offering of stock, would certainly not be a satisfaction of the requirement of available adequate financing. Thus, on its face, the expression, "ability to obtain adequate financing" means "reasonable ability to obtain sufficient financing by ordinary, recognized means."

The application of the interpretation just stated must depend to some degree upon the position of the parties and the customary manner of dealing with the business at hand. For example, if all of the parties lived in Shelbyville and confined their business activities to Bedford County, and if it were shown that it was unheard of for financial institutions in nearby counties to lend money for enterprises in Shelbyville, then "ability to obtain adequate financing" might have meant to the contracting parties, "ability to obtain adequate financing in Shelbyville."

■■ A contract must be enforced according to the ordinary meaning of its words unless both parties understand and agree at the time of the contract that its meaning is otherwise. Its ordinary meaning is that meaning which would have been derived from its words by reasonable persons dealing in the same situation as that of the contracting parties. *Hardwick v. American Can Co.*, 113 Tenn. 657, 88 S.W. 797 (1905).

■ The fact that one party unilaterally conceived a peculiar meaning not shared by the other party will not avail to disturb the plain and ordinary meaning of the words of the contract.

Thus, the testimony of defendant's witness that financing is done "ideally" or "primarily" in the local community is not sufficient to establish that both sellers and buyer intended that available financing be limited to the local community. Defendant's testimony as to the discussion of local financing is offset by his testimony that he stated at the same time that he had financing available in Nashville.

■ In summary, the contract was subject to reasonable application of its words according to the known situation of the parties, but was not ambiguous. The Chancellor therefore did not err in his interpretation of the phrase, "adequate financing", as suggested in the first issue.

The second issue suggests that the Chancellor erred in excluding parol evidence to explain (limit) the meaning of "adequate financing."

■ As already stated, there was no ambiguity, hence, no occasion to admit parol evidence to vary the plain meaning of the contract.

The third issue suggests that the Chancellor erred in admitting evidence that defendant admitted that he had financing available in Nashville. This testimony was submitted in explanation of testimony elicited by appellant on cross examination of plaintiff, William Moore, that "they wanted local financing if it was available." Later, the same witness was allowed to testify, "he had financing available in Nashville."

The purpose of the testimony just mentioned was not to vary the terms of the contract, but to elucidate the situation in which the parties dealt in order to apply the wording of the contract to that situation.

■ The Chancellor did not err in admitting the evidence in question.

The fourth issue presented by appellant is as follows:

Whether the Trial Court erred as a matter of law in ruling that Defendant was completely precluded from relying on a latent ambiguity in a written contract for the sale of real estate as a result of such contract being drafted by the Defendant or by the agent of Defendant.

As heretofore stated, the background of circumstances in which the parties dealt was admissible to apply the terms of the contract, but there was no obscurity or ambiguity in the contract requiring interpretation by the Court, hence, there was no occasion for applying the rule requiring resolution of ambiguities against the draftsman.

No error is found in the actions of the Chancellor. His judgment is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded to the Chancery Court for enforcement of judgment and costs, including costs of appeal.

Affirmed and remanded.

SHRIVER, P. J., and LEWIS, J., concur.